Mr. Duke. Thank you, Your Honor. May it please the Court. We've asked this Court to do several things, including one, to provide constructions of claim terms that were disputed as to the nature of the claim, and two, to find that no reasonable jury could find infringement given a proper claim construction as an Eon Corp., and three, to find that the District Court abused its discretion in not excluding the damages expert of NobleBiz, Mr. Hoffman, without providing an analysis. Could I understand what claim constructions affect which claims here? As I understand it, the replacement telephone number is pertinent to the 122 patent claims, and the outbound call limitation is pertinent to the 399 claims. Is that correct? That's correct, Your Honor. So at this point, you're not arguing that in the 122, the preamble is limiting? We did not appeal that decision, Your Honor, that it was limiting. Okay. So as I understand it, you moved for game law with respect to literal infringement, but not doctrine of equivalence. Is that correct? Yes, Your Honor. So if we were to agree with your claim constructions, we could hold that there is no literal infringement, but with respect to doctrine of equivalence, wouldn't there have to be a new trial under those circumstances? That very well could be the case, Your Honor. On the other hand, we did discuss doctrine of equivalence in the jury verdict being inconsistent, because the jury found infringement only under the doctrine of equivalence with respect to every claim, even though it was only argued that there was infringement under the doctrine of equivalence with respect to some claims of the 122 patent. Okay. All right. So maybe you can address the two main claim construction issues, the replacement telephone number and outbound call. Okay. The replacement telephone number was specifically referenced when the district court discussed O2 micro, and hopefully this gets to your point, but the district court noted that although he gave it a plain and ordinary meaning, that the parties were, quote, diametrically opposed as to what the plain and ordinary meaning actually is. And this is exactly the type of case where plain and ordinary meaning is not appropriate according to O2 micro. So moving to replacement telephone number, it was argued by a Pelley's expert on infringement that, quote, there's nothing in the claim language that says it has to replace something else. By definition, it's a replacement number. He also said it just says, quote, it just says it's a telephone number. It doesn't say it has to be a dialable telephone number. And when he was asked, do you have to replace something for a replacement number, he answered no. So under the plain and ordinary reading, even appellants argue that a replacement telephone number has to A, be a telephone number, and B, has to replace something else. Arguing otherwise either reads out the word telephone from telephone number or replacement from replacement telephone number. Did you move to strike that testimony? No, Your Honor, we did not. Well, why not? I mean, it does seem that there's a tension here between words that do seem to have a plain and ordinary meaning and expert testimony that just isn't at all admissible to that topic when it's so contrary to what that meaning is. I agree, Your Honor. Given the court's claim construction, the court also said when it was discussing O2 micro, quote, defendants could attempt to persuade the jury using essentially the same arguments used here for claim construction, and that providing a plain and ordinary meaning construction provides both parties, quote, equally strong arguments regarding the infringement issues. It was made clear that the district court was punting claim construction to the jury, and we were left really with not much of an option other than to argue as we did. I'm just concerned about where the line is on O2 micro between construction issues and factual issues that should be left for the jury, and it seems like if we push O2 micro the way you're doing, it almost reads out the possibility of having plain and ordinary meaning for certain claim terms. On the other hand, the expert's testimony in this case that a replacement number could better resolve at the factual stage that the district courts are better with expert witness testimony that shouldn't be admitted than construing what every term that's disputed that has what should be a plain and ordinary meaning. If I understand Your Honor correctly, why should we push this so far so as we never use plain and ordinary meaning? I believe that O2 micro makes a pretty clear case that if the parties agree there's a plain and ordinary meaning, or if it's clear that there's a plain and ordinary meaning, but they have completely different understandings of what that plain and ordinary meaning is, then that evidences a difference in perception of scope, not really a difference as to the factual issue. This case I don't think approaches that because in this case the parties agree on how the accused features operate. There was no dispute as to factually how the accused features work, only whether the claims were broad enough to encompass them, which is why we have testimony going to replacement doesn't mean replace, and then contrary testimony saying replacement doesn't mean replace. Does that answer your question, Your Honor? Thank you very much. Any other questions on O2 micro? The outbound call issue, and this is a very important one for the 399 patent, the 399 patent requires handling of an outbound call. The Northern Statement stated that an outbound call is a call made from an originator to a target, and clarified that an outbound call has to be extant or existing. There has to be a call existing for an accused infringer to handle it. It's undisputed how the accused features work. Again, these two patents are directed to a process by which a system can handle a call, and this is something that Noblebiz could do because it was a telecom provider and has access to the telecom lines as is shown in those figures at the beginning of our reply brief. It intercepts a call that has been made by an originator, takes the information in that call, takes out the caller ID information and puts in a replacement telephone number, and then sends it on its way. And we've referred to this as a catch and release model. It's undisputed that TCN and Global Connect are nothing more than dialers that operate over a voiceover internet protocol. They initiate calls or send invites to initiate calls. Even Noblebiz's expert talked about these SIP invites. They stand for Session Initiation Protocol Invite Messages. These are kind of like emails that are sent. You have a form that has a to line and a from line and a body and a subject. In the to line is the telephone number of the target. In the from line is the caller ID information. What TCN and Noblebiz do is simply fill in the information. Namely, they fill in the caller ID information. If it's custom, then it's custom. In this from line, put in the rest of the information for the call to go out and send this invite along, just like an email, and instruct the caller how to send out this call. Global Connect, in the default form, has several zeros. TCN, in its default form, has all zeros. TCN, in its default form, has nothing. So that's where the replacement telephone number comes in. As to outbound call, there is no call that is in existence when TCN and Noblebiz do their thing. Because the call is not extant, because no call exists, they're simply filling out an invite that would initiate a call. Outbound call cannot be found as well. Does that address that as well, Your Honor? Yeah. If the court doesn't have an objection, I'd like to discuss Mr. Hoffman very quickly. Mr. Hoffman should not have been allowed to present his opinions on damages to the jury. His methods were not appropriate, and the evidence he relies on were not sufficiently related to the damages issue that it should have been accepted. What was wrong with his method of calculation? So his method of calculation was really a black box, honestly. All of the Georgia-specific factors were recited and addressed to some extent. But I would argue that this is close to the Witserv case, where the court said reciting each factor and making a conclusory remark about its impact before moving on only tells the jury what the factors may be, not really how they affect. So we have Mr. Hoffman addressing factors, or at least reciting factors, and then coming up with a royalty number. In no way did he provide some kind of starting number that he could actually calculate on. And when he asked for a calculation when he was pushed, he referred to marketing material that touted increase in productivity, and basically said in his deposition, look, you tout that you have a 50-100% increase, and you sell your entire platform for a certain amount of cents per minute. So if I add a premium of somewhere in the 50-100%, I should get a sizable increase in what you can charge. This doesn't really apply using, or this shouldn't use the marketing statistics. And maybe I'm moving on. Does that answer your question about the methodology? Well, did you propose an alternative expert calculation? Global Connect's expert did propose an alternative calculation. TCN's expert did not propose an alternative, but showed similar, or showed several rates that could be more applicable, but did not provide an expert opinion. I mean, the issue is these factual questions were presented at trial, and to decipher where the error might have been. Yes, Your Honor. But we argue that the court didn't exercise its gatekeeping role and present an unsupportable, and prevent this expert from presenting an unsupportable opinion to the jury. Which then was adopted by the jury in the court. It was not strictly adopted by the jury, from what we could tell, in trying to apply some reverse calculations to the jury verdict. It looks like the jury applied a .3 cents royalty, rather than the 1.5 cents that Mr. Hoffman advocated. Okay. Let's save your rebuttal time. Let's hear from the other side. Thank you, Your Honor. Mr. Daniel. Good morning, Mr. Jones, Judge Hughes, Judge Dyke, Judge Newman. May it please the court. After five years of litigation. So, they asked for specific claim constructions with respect to the replacement telephone number and outbound call. And the district court refused to adopt those claim constructions. What was wrong with the claim constructions that they urged with respect to those two claim terms? Take replacement telephone number first. Why are they not correct if there has to be a replacement telephone number that replaces an extant number? Thank you, Your Honor. What's wrong or erroneous with what defendants urged and are trying to adopt from the California court is that they are parsing the terms, they are importing limitations, and they are ignoring express limitations in the claims. I have no idea what you're saying. I mean, the replacement telephone number on its face suggests that there's an extant number that's being replaced, doesn't it? It does not, Your Honor, because the replacement telephone number needs to be read in the context of the claim itself under Hockerson, Halberstadt, and related precedent. Because in context, the replacement telephone number modifies the caller identification data. It doesn't necessarily modify a first telephone number. And that's where the defendants err and where the California court did as well. I don't understand what you're saying. What are you saying? Your Honor, the claim limitation is replacement telephone number. Right. Defendants attempt to parse out replacement. And you say if you have the adjective replacement, you have to be replacing something. Right. But the claim terms here, the limitation here is replacement telephone number. And it's got to be read within the context of the claim itself, which is select a replacement number from the plurality of outgoing telephone numbers based on at least the area code of the call target. So in context, replacement telephone number modifies the caller identification data. It doesn't mean that you necessarily have to have a first original telephone number. And that's where the defendants erred, as did the California court. But if that's your position, why didn't you argue that on claim construction? Because that's not the common and ordinary meaning of replacement telephone number. That's something that you're suggesting you are the lexicographer on based upon your particular claims and specification. Your Honor, we're not asking to be our own lexicographer. We argued in the lower court that replacement telephone number had its plain and ordinary meaning, and that that plain and ordinary meaning would be understood, clearly understood by one of ordinary skill in the yard. And that's what moves this case outside of the O2 micro realm, which was Your Honor's concern earlier. And it does not fit into the O2 micro rubric. It better fits under Summit 6. We're not talking for the moment about O2 micro. We're simply talking about what this claim term means. And replacement on its face means you're replacing something that exists. And you're trying to give it a meaning that is contrary to that. Your Honor, again, I don't believe it's contrary because the whole limitation is replacement telephone number or that phrase. And that's got to be read in the context of the rest of the claim limitations and the claim itself, which is select the replacement telephone number from the plurality in that database of the outgoing telephone numbers. So again, in context, replacement telephone number is modifying the caller identification data and not necessarily a first number. And that's where the defendants err as, again, you mentioned before, the California court did. So the urging by Noble-Biz was that the plain and ordinary meaning does apply here, and that the terms were understandable. They were understandable, and there was trial evidence adduced that the defendant's witnesses understood what the term meant by replacement telephone number. It was actually even in one of TCN's documents. So going back to that Summit 6 would make this case distinguishable from the O2 micro realm, the term was clear and understandable. So we're outside of the realm of EON, where there had to be significant trial testimony devoted back and forth to what does that term mean. That was not the case here. And as Judge Hughes honed in on, the defendants did not object to the testimony that was elicited. If they objected to the claim construction, they proposed a specific construction, which is consistent with the construction that they're urging now, correct? Your Honor, in the lower court they did. But what I'm stating is that they did not object when the expert gave some testimony. And, in fact, the defendants elicited much of that testimony. Why do they have to object to the expert when they've already objected to the claim construction? Because the claim construction was already governing the case for the trial and utilizing that claim construction and the factual issue that stemmed around it. How does the system operate? How does GlobalConnect's system operate? Are you suggesting they didn't preserve their objection to the district court's failure to give their construction? No, Your Honor. I'm not suggesting that. They did preserve that. But in response to Judge Hughes' question earlier about why did you not object if you're complaining about what the expert said or didn't say at trial, under this court's cytologic decision, they waived that argument because they did not object. But following through with respect to the Summit 6 analysis, which is more apt here, there is no scope issue here because also the Texas District Court adjudicated the improper limitations by the defendants that were suggested. So that puts this case more, again, into the realm of Summit 6 and the Court's recent decision in PRISM, where the exclusion of specific ---- What about an outbound call? Your Honor, outbound call also adds in an improper limitation, namely the already extant temporal limitation that counsel just argued about. There is no requirement that the call already be extant. And as a matter of fact, if that construction were adopted, it would fully read out the call originator embodiment. So turning back ---- Why is that the case? Your Honor, that's the case because looking at Claim 1, for example, of the 122 patent, it recites the system operating in the call originators ---- operating in the call originator. The call originator is taught as, for example, a call center, a person, or an organization. Defendants' catch and release system or their catch and release embodiment where the process is within the carrier network, telecommunications network, would read out the call originator limitation and would also violate claim construction. Why does it read out the call originator? I don't understand that. Your Honor, because in Claim 1 focuses on the call originator. The claim says that it's a system operating in the call originator. Dependent Claims 2 and 4 then recite the system of Claim 1, so the system of the call originator, wherein the system is embedded in one of a carrier network, a private branch exchange, and a communications device. That's in Claim 2, the dependent claim. Dependent Claim 4, also relying on Claim 1, says that the system is embedded in a corporate phone system. So independent Claim 1 cannot be limited to the carrier network embodiment as the defendants are suggesting with their catch and release construction. That would violate claim differentiation under this Court's interdigital communications case. Similarly, and again, just walking through the intrinsic evidence, we've looked at the claim as the outbound call. The specification similarly supports noble business plan in ordinary meaning and cuts against the defendant's outbound call requirement that it has a temporal limitation. How does the specification support your view? Your Honor, this is at APPX388 in Column 2. The system and method may operate in originator's 100 PBX, e.g., corporate phone system, predictive dialer, call distribution system, or may be attached or embedded within originator's 100 communication device, e.g., telephone VOIP, voice over internet protocol soft phone. So defendant's catch and release argument would seek to limit the scope here to the figures, and it would exclude that express embodiment of Claim 1, which is the call originator's embodiment. Also, on their appeal for the first time, defendants raised that the summary invention somehow limits to the catch and release as well. They did not make that argument below, so it's waived. They don't have to. It's not waived. They're arguing for the same claim construction. They're just coming up with different arguments for it. That's not – there's no waiver of arguments. They're waiver of issues. Well, Your Honor, but they didn't raise that as such in the lower court, so we believe that in pursuant to this Court's – But, Your Honor, you can make new arguments on appeal as long as you're directed to the same issue. Well, Your Honor, we believe that under the Conoco decision of this Court – Assume the argument is before us, and let's respond to it. Yes, Your Honor. So even taking their reliance on the specification at face value, that portion of the specification, the summary invention, does not mention outbound call, nor was there any clear and unmistakable disavowal of claim scope such that the defendant's limitation should be read in. So therefore, again, it's erroneous to rely on the defendant's construction or the California court's construction if the court were to adopt it. If there are no further questions regarding claim construction, we urge that the Texas Court's claim construction be adopted. I'd like to now turn and respond briefly to the arguments about the damages expert Mr. Hoffman's analysis was robust. It followed directly the methodology of Georgia-Pacific. In fact, the defendant's expert, the one that did actually consider Georgia-Pacific, actually agreed or found neutral 9 of 15 of the Georgia-Pacific factors. So while defendants may wish to argue that this was not a reliable methodology, in fact, Mr. Hoffman went through in detail after considering all the record evidence and going through each of the Georgia-Pacific factors by item, considering the evidence under each of those, and getting to the royalty. Pursuant to this court's Erickson decision, the royalty that he relied on or that he arrived at reflected the value attributable to the accused feature and nothing more. He considered what the defendants charged to their customers for their entire system. So for the entire system, it was slightly over 3.2, 3.3 cents for Global Connect and slightly over 4 cents for TCM. He weighed that, he weighed the fact that all of the documentary evidence in the record that was not refuted at trial, it was not minimized at trial whatsoever, even though the defendants wished to say it's marketing puffery, it was just advertising statistics, they don't have any bearing here, did not carry the day. And in fact, he considered that this was one feature of many that the defendants offered. Global Connect, only 10% of their clients actually used the accused feature. Only 5% of TCMs. So he weighed all of this and he apportioned the value of the system based on that. He also apportioned the base and then applied that royalty rate to that royalty base to arrive at his ultimate damages. His damages actually were much higher than the jury actually found. His damages were close to $3 million as to Global Connect and just under $850,000 for TCM. And in fact, the expert for Global Connect was on the $100,000 or so order and as the damages bore out here, the jury found in between those ranges. So there was nothing excessive here. There wasn't the type of sheer surmise or conjecture that the Witserv case spoke to. Rather, this case is more in line with Telcordia where there was not a rate put onto the verdict form and the district court who observed the trial, observed all of the evidence and the fact finder's role was able to discern what the actual royalty was and whether the damages were proper. So there was no abuse of discretion here by the district court in finding that the verdict was solid and it was in fact supported by legally sufficient evidence. Ultimately, Mr. Hoffman's methodology was reliable. He apportioned the rate. He apportioned the base. It came out to his royalty properly. If there are no questions with respect to damages, I'd like to briefly. I have a question with respect to the status of the execution of the judgment. We granted a stay as to TCM. Yes, sir. So what's happened? Your Honor, as to that, there's been no activity with respect to TCM other than. Pardon me, sir. What is the activity with respect to Global Connect? As to Global Connect, Your Honor, Noble Biz has filed to register the judgment as to Global Connect and Global Connect only in New Jersey, which is where Global Connect is based. Global Connect was not stayed as the court was aware under that motion, that emergency motion that was brought. As to TCM, Noble Biz has not. So the only thing that's happened is the registration. Yes, Your Honor. The registration was made. Global Connect brought a motion to stay the registration itself, largely based on the argument that this appeal to the Federal Circuit was pending and that the Superior Court of New Jersey should just wait until this appeal runs its course before it picks up the registration. And the New Jersey court has not done anything? It has not done anything yet, Your Honor. The reply brief was basically submitted about a week ago, and that closed out the briefing period, and we learned from the court's clerk that they're not requesting any oral argument. It will be decided on the papers. If there's no further questions regarding the emergency stay, I'd like to briefly turn in my remaining time to the California court construction. As I indicated, the California court's construction is erroneous. The California court characterized its claim construction that it could be on a rolling basis subject to alteration and revision as the court's understanding of the technology developed. So we feel that on a number of levels, it's improper for the defendants to rely on that California construction. Number one, again, considering that it was on a rolling basis and is subject to revision, it's not quite right. They're just arguing that the California court came to a different conclusion and that we should pay attention to that. Nobody's suggesting the California court's construction is binding in this proceeding. Correct, Your Honor, but the defendants are attempting to rely on it to say that they don't infringe here, and that's a change in their constructions both by way of their underlying basis for the construction, and it would cut against this court's conical decision. Nonetheless, and under this court's Teleflex and Z4 Technologies cases, this court can affirm infringement based on substantial evidence put forth by Noble-Biz that the defendants still infringe if the California construction is adopted. Based on the final construction, there's nothing wrong with the evolution of understanding of the issues as the case proceeds. Correct, Your Honor, but if this court were to adopt the California construction as it is right now, which is what defendants are asking, Noble-Biz maintains that this court can affirm infringement, again, under Teleflex and Z4. Noble-Biz has marshaled the evidence in its appellee's brief at pages 27 through 31, which sets forth how each of the limitations that are challenged, even under the California court's claim construction, would in fact be infringed. Okay. I see that my time is up, Your Honor. Thank you for your courtesies and considerations. Any questions? No questions? Okay, thank you. Thank you, Your Honor. Thank you, and I'll add a couple of minutes to Mr. Duke's time because we've run over. Thank you, Your Honor. Is there anything that the court would like me to respond to or any questions? Counsel's description of the status of the execution is correct. Correct, with the exception that there is a lot of discovery pending as well as Noble-Biz is pushing for a 30B6 deposition of Global Connect. The context of the patent is really what the Northern District of California focused on, and I think it does give a very good summary of why its claim constructions are reasonable. What should also be taken into account is the prosecution history of the 122 and the 169 patents where the original claims were directed to originating a phone call and setting a telephone number. It was only during prosecution that limiting amendments were added that included a replacement telephone number and handling an outbound call, and the limitation of modifying information was added out of whole cloth to get around certain objections to these claims. So looking at the prosecution history, there certainly should be some narrowing of these beyond a very, very broad scope. The embodiment that counsel referred to in the specification of the patent does speak about this system being used in different places, but it's the claims that were narrowed and may not encompass all of the embodiments that are in this spec now. With respect to Mr. Hoffman, we do argue that there was an abuse of discretion, and one of our big problems is that we can't tell what the district court's discretion was because no analysis was provided. Mr. Hoffman basically used a black box analysis. When he was asked if he could provide a calculation or formula or explain his methodology, he said, quote, it's a negotiated amount based on my understanding, my experience in doing these kind of negotiations. It's not calculated. It's not I can't give you a formula that gets you to 1.5 cents. And this is concerning to know that it's just a black box. Yes, the factors were considered, but there's nothing that points to how the end result came. You can say up or down on several factors, but unless you know what you're increasing or decreasing, the methodology is really obtuse. Thank you, Your Honors, for your time. I appreciate it. Okay. Any further questions? Thank you. Thank you. Thank you both. The case is taken under submission.